IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROBERT L. BATES,              ) | |
|                                           ) | |
|     Movant,                         ) | |
|                                           ) | Cv. No. 2:20-cv-02579-SHL-atc |
| v.                                      ) | Cr. No. 2:15-cr-20192-3-SHL |
|                                           ) | |
| UNITED STATES OF AMERICA, ) | |
|                                           ) | |
|     Respondent.                  ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255, DENYING A
CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN
APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), filed by Movant Robert L. Bates ("Bates"), Bureau of Prisons register number 27606-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee (ECF No. 1), and the Response of the United States to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Answer") (ECF No. 6). For the reasons stated below, the Court **DENIES** the § 2255 Motion.

I.      BACKGROUND AND PROCEDURAL HISTORY

        A.      Criminal Case No. 2:15-cr-20192-3-SHL

On August 4, 2015, a federal grand jury in the Western District of Tennessee returned a forty-four (44) count indictment against Bates, Charles Larry Bates ("Larry Bates") and Charles Edward Bates ("Chuck Bates"). (Criminal ("Cr.") Case No. 2:15-cr-20192-3-SHL, ECF No. 2.) On May 11, 2016, the grand jury returned a forty-five (45) count superseding indictment against the three defendants named in the original indictment and Kinsey Brown Bates ("Kinsey Bates").

(Cr. ECF No. 84.) Bates is Larry Bates's son, Chuck Bates's brother, and Kinsey Bates's husband. Kinsey Bates was Larry Bates's personal assistant. The indictment concerned the Bates family's operation of First American Monetary Consultants ("FAMC"), a broker for precious metal transactions. Bates was a salesman. His father was FAMC's founder, President and Chief Executive Officer. As the Sixth Circuit Court of Appeals explained,

> Larry Bates held himself out to the public as an apocalyptic economist committed to helping customers safeguard their wealth by purchasing precious metals from his company, First American Monetary Consultants. The reality was quite different. First American Monetary Consultants regularly failed to deliver gold and silver coins to its customers after they had mailed checks or wired money for their orders, and it ultimately defrauded hundreds of people to the tune of over twenty million dollars.

*United States v. Bates*, 784 F. App'x 312, 317 (6th Cir. 2019).

Bates was named in Counts 1, 2, 3, 4, 27, 32, 33 and 41 of the superseding indictment. Count 1 charged that, beginning at least in or about May 10, 2002, and continuing through in or about October 21, 2013, all defendants conspired with each other and with other persons to use the mails and wire communications in execution of a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, to induce members of the public to send them large sums of money for the purported purchase and/or sale of gold, silver and other precious metals, in violation of 18 U.S.C. § 1349. Counts 2, 4, 27 and 33 charged Bates and his father with specific instances of mail fraud for the purpose of executing their scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 2. Counts 3, 32 and 41 charged Bates and his father with specific instances of wire fraud for the purpose of executing their scheme to defraud, in violation of 18 U.S.C. §§ 1343 and 2.

A jury trial on the charges against all defendants commenced on April 3, 2017. (Cr. ECF No. 333.) On May 2, 2017, the jury returned guilty verdicts on all counts. (Cr. ECF Nos. 401,

405.) Sentencing hearings were held on August 3, 2017, and September 6, 2017, at the conclusion of which the Court sentenced Bates to a term of imprisonment of one hundred fifty-one (151) months, to be served consecutively to the sentence imposed in Case Number 2:16-cr-20044-JTF and to be followed by a three-year period of supervised release. (Cr. ECF Nos. 572, 637.) Bates was also ordered to pay restitution in the amount of $19,571,532.09. (Cr. ECF Nos. 572, 637 at PageID 11349.) Judgment was entered on October 20, 2017. (Cr. ECF No. 614.) The United States Court of Appeals for the Sixth Circuit affirmed. *Bates*, 784 F. App'x 312.

B. **Bates's § 2255 Motion**

On August 6, 2020, Bates filed his *pro se* § 2255 Motion, which presents the following claims:

1. "Severance of case" (ECF No. 1 at PageID 4);

2. "Sufficiency of the Evidence for Conspiracy Conviction" (*id.* at PageID 5);

3. "Procedural Reasonableness of Sentence" (*id.* at PageID 7); and

4. "Separate 922G Indictment should have been Superceding [sic] and Stacking Issue" (*id.* at PageID 8).

The Court issued an order on August 12, 2020, directing the Government to respond. (ECF No. 4.) The Government filed its Answer on September 2, 2020, which was accompanied by the Affidavit of Arthur E. Quinn, Bates's trial counsel. (ECF No. 6.) Bates did not file a reply.

II. **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

3

> the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "The evidentiary hearing is mandatory unless the record conclusively shows that the petitioner is entitled to no relief." *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (internal quotation marks omitted). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollections of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him [or her] summarily to dismiss a § 2255 motion . . . ."). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

4

### III.  ANALYSIS

#### A.  Severance

Bates's Claim 1 is titled "Severance of case." (ECF No. 1 at PageID 4.) The factual basis is as follows:

> As the court already knows, severance of the case was asked for and denied several times during the trial. It is impossible to say that evidence submitted at trial not connected or relating to me was not prejudicial to my case. When my father, Larry Bates[,] testified I asked my attorney Art Quinn about asking my father questions, but Art told me we did not want to be a part of that and the jury would hold any association with my father against me. I believe that was ineffective assistance of counsel.

(*Id.*)

Bates raised the Court's denial of the motions to sever on direct appeal. (6th Cir. Case No. 17-6284, ECF No. 46 at 2, 10–18.) The Sixth Circuit held that the Court "did not abuse its discretion in denying the defendants' motions for severance." *Bates*, 784 F. App'x at 328; *see also id.* at 328–30. The court reasoned that "Larry Bates' conduct and trial testimony were not so prejudicial as to warrant severance." *Id.* at 328. "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citations omitted). No such circumstances exist here. Bates cannot relitigate the Sixth Circuit's decision on the severance issue.

In this claim, Bates also contends that his attorney was ineffective in failing to properly cross examine his father. A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which require a showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." To demonstrate

5

deficient performance, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see also id.* at 111–12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

Bates has not established either that his attorney's performance was deficient or that he suffered any prejudice. In his affidavit, Quinn notes that "the Petition is not specific as to what

6

questions [Bates] wanted me to ask that I did not ask." (ECF No. 6-1 at PageID 36.) Quinn further explained his handling of Larry Bates's testimony:

> [A]t the end of the government's proof, I made a Motion to sever using as the grounds that my client was willing to rest his case at that particular point without putting on defense proof. I further had information that Dr. [Larry] Bates was going to testify and based on my then approximate 40 years of criminal experience, I knew a case can get worse when a defendant testifies. I anticipated that the case would get worse if Dr. Bates testified. I had called Dr. Bates as a witness in my client's 922(g) trial a few months earlier, and he was not a good witness. In my opinion, after listening to Dr. Bates testify, I do believe the case against my client got worse.
>
> In his Petition, [Bates] indicated that I did not ask his father some questions that he wanted me to ask. The record shows that I did in fact ask Dr. Bates questions. They were questions which were asked with the idea of laying the groundwork for our arguments that Robert Bates repaid any advances or loans made to him through the compensation he earned. Considering the testimony elicited by other lawyers, I am not aware of any other information which would have been helpful that could have been credibly elicited from Dr. Bates.

(*Id.* at PageID 36–37.) "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690. And Bates makes no argument that Quinn was not fully familiar with the facts or the applicable law.

Bates has not filed a reply and, consequently, has not responded to Quinn's affidavit. He has not explained what additional questions he contends Quinn should have asked and has made no argument that, if only he had done so, there is a reasonable probability that the outcome of his trial would have been different.

Claim 1 is without merit and is **DENIED**.

B.      **Sufficiency of the Evidence (Claim 2)**

Bates's Claim 2 is titled "Sufficiency of the Evidence for Conspiracy Conviction." (ECF No. 1 at PageID 5.) The factual basis is as follows:

> The Appeals Court stated the government said I knew FAMC was insolvent. How could I know that FAMC was insolvent when I was never an

7

> owner, director, or an executive at FAMC, just a salesman. I never signed checks nor was I ever privy to account balances or ledger sheets until we were indicted and headed to trial. The government also stated I should have known something was amiss since the delays in clients receiving orders was so long. I was employed with FAMC from 1998–2013, twelve of those years as a consultant/salesman. At least twice before in those years as a consultant/salesman there were periods of long delivery times (Around a year) for clients to receive their orders. I always presumed clients would receive their orders. When delivery times exceeded 18 months around 2011 I stopped selling precious metals outside of IRA's which were bullion coins and were not subject to delay. As far as any advances I received from FAMC, they were all paid back but Mr. Quinn did not want [to] address this at trial. I believe this is ineffective assistance of counsel.

(*Id.*)

Bates argued on direct appeal that the evidence was insufficient to convict him on Count 1, the conspiracy to defraud. (6th Cir. Case No. 17-6284, ECF No. 46 at 27–30.) Specifically, Bates argued that no evidence was presented that he was aware of FAMC's financial condition. The Court of Appeals denied relief, reasoning as follows:

> The Government presented sufficient circumstantial evidence of Bob Bates' knowledge of and participation in the conspiracy to defraud, and a rational trier of fact could have accordingly found Bob Bates guilty on the conspiracy count. Customers testified that Bob Bates continued to advise them to buy coins with [FAMC], even after he knew that their prior orders remained unfulfilled. There was also testimony from both customers and former [FAMC] employees demonstrating that Bates knew about the unfulfilled orders, with one economist claiming that Bates told him to "leave it alone" in response to a question about a customer complaint. Bob Bates and his wife, Kinsey Bates, both withdrew money from [FAMC] for their personal use while the company was insolvent and owed money to its customers. Based on this evidence, a rational trier of fact could conclude that Bates had knowledge of the conspiracy and voluntarily joined it, despite [FAMC's] poor record-keeping.
>
> . . . [M]ultiple facts supported an inference that Bob Bates had knowledge of [FAMC's] unfulfilled customer orders, including the fact that Bob Bates was Larry Bates' son, that he was married to Larry Bates' personal assistant, and that he had access to the executive suite. When codefendants are immediate family members and business partners, we have determined that their close relationship "raises a permissible inference that they might share information concerning their business activities." *United States v. Warshawsky*, 20 F.3d 204, 209 n.2 (6th Cir. 1994). Viewing the evidence in the light most favorable to the Government, there

> was sufficient evidence for the jury to draw such an inference and find Bob Bates guilty of conspiracy to commit mail and wire fraud.

*Bates*, 784 F. App'x at 327.  Bates cannot relitigate the Sixth Circuit's decision in this action.

Bates also argues that Quinn rendered ineffective assistance by failing to establish that he repaid the advances he had taken from FAMC.  In his affidavit, Quinn states that he presented proof that Bates repaid the advances and that, at some point, he stopped selling gold coins and emphasized IRAs instead.  (ECF No. 6-1 at PageID 37–38.)  In its opinion, the Sixth Circuit noted the advances for the benefit of Bates and his wife and stated that "[a]t least some of the money was paid back by crediting the advances against sales commissions."  (6th Cir. Case No. 17-6284, ECF No. 70-2 at 7.)  FAMC's court-appointed receiver testified, however, that the transactions were "'unusual' because the company had been insolvent since 2007, and a 'significant number' of customer orders remained unfulfilled while members of the Bates family were using [FAMC] funds."  (*Id.*)  The personal advances also had a deleterious effect on customers, testified the receiver:  "The withdrawals would have also exacerbated [FAMC's] inability to fulfill precious metal orders because the price of gold had risen between 2008 and 2011."  (*Id.* at 7–-8.)

Bates has, again, failed to show deficient performance or prejudice.  The additional evidence he contends that Quinn should have elicited was actually presented, and he does establish that, had Quinn presented even more evidence, there is a reasonable probability that he would not have been convicted on Count 1.

Claim 2 is without merit and is **DENIED**.

C.     **Procedural Reasonableness of the Sentence (Claim 3)**

In Claim 3, Bates complains that his sentence was procedurally unreasonable.  (ECF No. 1 at PageID 7.)  He explains:

9

> The only unearned financial gain that I received was my commission of less than $30,000 for my clients whose orders were unfulfilled. (This was typical because all salesmen at FAMC received their commissions when the clients' monies were received not when the clients received their orders.) My total former clients' unfulfilled orders are less than $900,000 if my memory serve[s] me right, but my sentence was enhanced based on client losses of $19 million plus. Sherry Barnett who actually stole at least $420,000 of client's monies received 1 year and 1 day in prison while I was sentenced to 12 years and 7 months. Ms. Barnett was also privy to ledgers and balance sheets I knew nothing about. During my sentencing the court commented that I was at least guilty of willful ignorance or sticking my head in the sand. This comment has stuck with me for the past couple of years. I have stated many times that I was never privy to FAMC's financial records. I still believe my Dad was stating the truth. He has been an honest man all my life and an important and upstanding member of the community as well. Maybe I am too trusting or some may say gullible but I did not willfully stick my head in the sand. I do know I <u>never</u> any [sic] from my former clients much less $19 million. I believe I had ineffective assistance of counsel throughout the case.

(*Id.*)

As a preliminary matter, despite the title, the substance of Bates's argument does not address the procedural reasonableness of his sentence.¹ Instead, Bates is challenging the substantive reasonableness of his sentence, including the fact that he was found jointly and severally liable for the forfeiture and restitution amounts.² On direct appeal, Bates argued that he should not have been held jointly and severally liable for the forfeiture loss amount. (6th Cir.

---

¹ Bates challenged the procedural reasonableness of his sentence on direct appeal, arguing that the Court misapplied a sentence enhancement. (6th Cir. Case No. 17-6284, ECF No. 46 at 3, 30–37.) The Sixth Circuit denied relief, *Bates*, 784 F. App'x at 337–38, and that issue may not be relitigated here.

² Determining whether a sentence is procedurally reasonable looks at whether "[t]he court properly calculate[d] the guidelines range, treat[ed] that range as advisory, consider[ed] the sentencing factors in 18 U.S.C. § 3553(a), refrain[ed] from considering impermissible factors, select[ed] the sentence based on facts that are not clearly erroneous, and adequately explain[ed] why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Analyzing a claim that a sentence is substantively unreasonable evaluates whether "a sentence is too long (if a defendant appeals) or too short (if the government appeals). . . . It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.* at 442.

Case No. 17-6284, ECF No. 46 at 2, 37–39.) In his appellate brief, Bates emphasized that he received commissions of only $27,371 on unfilled orders. (*Id.* at 38–39.) The Sixth Circuit denied relief, holding that Bates was properly held jointly and severally liable and that there was no violation of the Eighth Amendment. *Bates*, 784 F. App'x at 339–41. Bates cannot relitigate this issue here.

Bates raised no objection to his custodial sentence on direct appeal. A § 2255 motion is not a substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "[N]onconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Errors in the application of the sentencing guidelines are also not cognizable under § 2255. *Id.*; *see also Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018) ("a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations"); *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) ("Relief is not available in a section 2255 proceeding for a claim of nonconstitutional, sentencing-guideline error when that error was procedurally defaulted through the failure to bring a direct appeal."). Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Bates's objection to his custodial sentence was available to him on direct appeal. It is now barred by procedural default.

Finally, Bates argues that Quinn was ineffective throughout the case. As Quinn pointed out, however, Bates failed to specify what he believes should have been argued. (ECF No. 6-1 at PageID 38.) Quinn filed a position paper in which he argued that Bates's relevant conduct should be limited to $843,005.65, the total losses incurred by his clients. (Cr. ECF No. 485 at PageID 7777–78.) Quinn also argued strenuously against joint and several liability for forfeiture and restitution. (Cr. ECF Nos. 430-1, 433.) Bates fails to establish that Quinn's performance was deficient or that he suffered prejudice.

Claim 3 is without merit and is **DENIED**.

### D.	Separate § 922(g) Indictment (Claim 4)

Claim 4, titled "Separate 922G Indictment should have been Super[s]eding and Stacking Issue," provides as follows:

> I was indicted for Mail & Wire Fraud on 8/6/15 and separately indicted on a 922G charge on 3/18/16. This 2nd indictment should have been a superseding indictment instead of a new one. During the 922G pretrial hearing when asked where the case and evidence originated from, the US Atty. Mr. Pritchard stated he could not remember exactly, but it was either the plaintiff's attorney or the receiver in the civil case. That case is what led to this case and conviction so they are most certainly connected and the 922G case would not exist without this case. Granted adding the 922G charge to this case would have made for an even more confusing and complicated case and trial than the 5 week trial that took place, but it should have been included in the mail and wire fraud case. In doing so my criminal history points would have decreased as well since I had only been in trouble once before and that case was set aside (AZ remedy for expungement) and all my rights restored.
>
> Since my sentencing in 2017 they have come out with new laws against stacking sentences particularly 922G convictions. This occurred in my sentencing when the 151 months for mail & wire fraud was to run consecutive to the 24 month 922G sentence for a total of 175 months. They must and should run concurrent with each other for a total of 151 months.

(ECF No. 1 at PageID 8.)

Bates is referring to his second federal criminal case, where Bates was indicted on March 17, 2016, on eight counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). (*United States v. Bates*, No. 16-20044-JTF (W.D. Tenn.), ECF No. 2.) Bates was represented by Quinn in that case. On November 2, 2016, the jury returned a guilty verdict on all counts of the indictment. (*Id.*, ECF Nos. 58, 60.) On February 23, 2017, the trial judge sentenced Bates to a term of imprisonment of twenty-four (24) months, to be followed by a three-year period of supervised release. (*Id.*, ECF No. 73.) The Sixth Circuit Court of Appeals affirmed. *United States v. Bates*, 730 F. App'x 281 (6th Cir. 2017). Bates filed a § 2255 motion addressing that conviction, which was denied on August 11, 2020, three days after the commencement of this action. (*Bates v. United States*, No. 2:18-cv-02817-JTF (W.D. Tenn.), ECF No. 6.)

Claim 4 cannot be addressed in this action insofar as Bates contends that his 922(g) indictment should have been a superseding indictment to his mail and wire fraud case. However, that issue has no bearing on the validity of Bates's conviction in Case Number 15-20192.

The only portion of Claim 4 that is cognizable here is the argument that the sentence in this case should not have run consecutively to that imposed in Case Number 16-20044. Because Bates could have challenged his consecutive sentences on direct appeal, this aspect of Claim 4 is barred by procedural default. There has been no post-sentencing change in the law that affects Bates's consecutive sentences.

In his affidavit, Quinn states that he argued for concurrent sentences in this case but was unsuccessful. (ECF No. 6-1 at PageID 39.) Quinn made that argument in his position paper and

13

at the sentencing hearing.  (Cr. ECF Nos. 485 at 7782–83, 637 at PageID 11322–25.)  Bates makes no claim that this aspect of Quinn's representation was ineffective.

Claim 4 is without merit and is **DENIED**.

\* \* \* \*

Because every claim asserted is without merit, the Court **DENIES** the § 2255 Motion.  The § 2255 Motion is **DISMISSED WITH PREJUDICE**.  Judgment shall be entered for the United States.

IV.   **APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  The COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  No § 2255 movant may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). "To put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*." *Id.*; *see also id.* ("Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable.").

In this case, there can be no question that the issues raised in Movant's § 2255 Motion are meritless for the reasons previously stated, therefore the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file a motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)–(5).

In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule

15

of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.[3]

**IT IS SO ORDERED**, this 27th day of September, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of entry of this Order. *See* Fed. R. App. P. 24(a)(5).